UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

DIANNE GEORGE,                        )
                                      )
            Plaintiff                 )
                                      )
      v.                              )   Case No. 2:07 cv 136
                                      )
MICHAEL J. ASTRUE,                    )
Commissioner of Social Security       )
                                      )
            Defendant                 )

## REPORT AND RECOMMENDATION

This matter is before the court on the petition for judicial
review of the decision of the Commissioner of Social Security
filed by the plaintiff, Dianne George, on April 26, 2007 (DE 1)
with opening brief in support filed March 3, 2008 (DE 20). For
the reasons set forth below, the court **RECOMMENDS** that the
decision of the Commissioner be **REVERSED** and **REMANDED.**

## Background

The plaintiff, Dianne George, initially applied for Supple-
mental Security Income and Disability Insurance Benefits on March
31, 2003, alleging a disability onset date of February 27, 2001.
(Tr. 57) The claims were denied initially on June 10, 2003 and
upon reconsideration on September 13, 2004. (Tr. 23, 32) George
requested a hearing before an Administrative Law Judge ("ALJ") on
November 9, 2004. (Tr. 35) A hearing before ALJ Denise M. Martin
was held on November 29, 2005, at which vocational expert Gless
A. Kehr testified. (Tr. 175) On September 29, 2006, the ALJ
denied George's application by written decision. (Tr. 13) Follow-
ing a denial of her request for review by the Appeals Council on

February 27, 2007, George filed a complaint in this court on April 26, 2007. (Tr. 5, DE 1)

George was born on July 20, 1950. (Tr. 57) At the time of the hearing before the ALJ, she was a 55 year old widow living with her mother. (Tr. 190) In a Work History Report, George documented working as a substitute teacher from 1987 to 1992 and as a Social Service director from November 1992 to 2001. (Tr. 88) However, an undated work background report and the hearing transcript indicate that she worked as a Social Service director from 1992 to 2003 and as a Substitute Teacher 1989 to 1992 and again in 2003. (Tr. 118, 191)

Dr. Darryl L. Fortson issued George a disability certificate on May 22, 2000, explaining that she was totally incapacitated and unable to perform any job because of acute bronchitis, HCVD, and fibrositis. (Tr. 120) On August 25, 2000, George was diagnosed at the Wabash Avenue Medical Clinic, Inc. with cerebrovascular accident, cervical disc displacement, and dental caries. (Tr. 119) In her initial disability report filed on March 31, 2003, George indicated that high blood pressure, back pain, disc displacement, minor stroke, and bowel syndrome limited her ability to work. (Tr. 78) She also indicated that Dr. William Lewis was her treating physician from May 2000 to 2002 and that he had prescribed Tiazac for her high blood pressure, Tylenol 3 for her back pain, and Zantac for her upset stomach. (Tr. 81)

In a disability report dated May 15, 2004, George indicated that Dr. Lewis was ill and that his colleague would be taking his

patients. (Tr. 102) The state disability determination bureau requested medical records from Dr. D.L. Fortson, Dr. Lewis' colleague, on June 23, 2004, but was informed that George had not been seen at Dr. Fortson's new office and that the bureau should check with Dr. Lewis' office. (Tr. 133) George informed the administration on July 20, 2004, that Dr. Lewis' illness caused his office to close indefinitely. (Tr. 108) A second request for the medical records was made on January 4, 2006, and a third request on March 16, 2006. (Tr. 163) The record indicated that Dr. Lewis died and no medical records concerning George's condition between August 25, 2000 and May 16, 2003, were obtained prior to the hearing. (Tr. 17)

On May 16, 2003, Dr. M. Zeitoun performed a consultative exam. (Tr. 121) During this exam, George claimed that she had back surgery in 1976, was diagnosed with bowel syndrome in 1999, was diagnosed with high blood pressure in 2000, and had a minor stroke in 2001. (Tr. 121) George's current medications included Tiazac, Alavert, Tylenol, and Dizies. (Tr. 121) During this visit, George also complained of headaches causing dizziness at times, blurred vision, light headedness, irregular bowels, and pain in her lower back at L4 and L5 which traveled down her left hip and into her leg causing severe numbness. (Tr. 121) The physical examination showed that she had a slow gait, was unable to walk tandemly or heel to toe, was unable to squat or stoop, and was unable to get on and off the examination table without

assistance. (Tr. 121, 123) The tests also showed that she could button, zip, and pick up coins. (Tr. 123) Dr. Zeitoun's final impression was lower back pain, cervical spine tenderness, and hypertension. (Tr. 123)

George completed her first Residual Functional Capacity Assessment (RFC) on May 20, 2003, with Dr. J. Corcoran. (Tr. 132) Dr. Corcoran diagnosed George with a discogenic back and bowel syndrome. (Tr. 125) Dr. Corcoran further concluded that George's exertional limitations included lifting 20 pounds occasionally, ten pounds frequently, standing or walking for two hours per eight hour shift, sitting for six hours per eight hour shift, and unlimited pulling and pushing. (Tr. 126) Dr. Corcoran noted that George had a slow gait and was unable to stoop, squat, or tandem walk. (Tr. 126)

On August 6, 2004, an X-ray performed by Dr. Y. Alobeid showed mild degenerative changes present involving the lumbar spine and calcification involving the abdominal aorta. (Tr. 143) Also on August 6, 2004, George had a second consultative examination with Dr. R. Rashan. (Tr. 142) The findings of this exam were similar to the first with only a few significant differences. (Tr. 137) George claimed that she had severe pain on the right side of her neck which radiated to her right arm with muscle spasms, back pain which radiated down her legs with numbness, and uncontrolled blood pressure. (Tr. 137) George's medications included Tylenol 3, Soma 350mg, and Lopressor 50mg. (Tr. 137) George still had a slow gait and was unable to walk tandemly,

4

walk heel to toe, stoop, or squat, but she was able to get on and off the examination table without assistance, open and close a jar, button, zip, and pick up coins. (Tr. 138, 140, 141) Dr. Rashan's final impression was lower back pain, hypertension, and cervical spine tenderness. (Tr. 142)

In a second RFC on September 8, 2004, Dr. J. Sands diagnosed George with back pain and obesity. (Tr. 147) George's limitations were equal to her first RFC with the following two significant changes: she could walk or stand for up to six hours of an eight hour shift but she never could climb a ladder, rope, or scaffold. (Tr. 148, 149) On November 9, 2004, George indicated that since July 10, 2004, her blood pressure and bladder became less controllable, she needed assistance bathing and exiting the tub, her pain became constant, and she developed a fibroid tumor on her uterus. (Tr. 109, 113, 115)

On an undated medical treatment form, George indicated first being prescribed Lotrel and Diovan on May 25, 2005 and HCTZ on September 15, 2005, for her blood pressure. (Tr. 117, 159) On progress notes dated November 29, 2005, the Gary Community Health Clinic diagnosed George with uncontrolled hypertension, degenerative osteoarthritis of the knees, chronic sinusitis, and dental caries. (Tr. 157) Earlier progress notes from the Gary Community Health Clinic noted that George's hypertension was controlled. (Tr. 155)

At the hearing before ALJ Martin, George indicated that her daily headaches, which she adjusted to by taking medication in

the morning, were the main issue preventing her from working. (Tr. 193) George also indicated that she had uncontrollable hypertension, dizziness, unsteady gait, and blurred vision three to four times a week. (Tr. 196) George noted that she did not wear any glasses but that her vision was "pretty good" a year ago. (Tr. 196) George testified that her middle back pain was unbearable at times but decreased if her feet were propped up. (Tr. 197) George also testified that sometimes she had to move from one chair to another, she could sit for only a minute or two before changing positions or standing, she could stand for only a few seconds before needing to sit, but that she could walk around the house and yard. (Tr. 198, 200) Further, George testified that she did not cook, wash dishes, do laundry, sweep, drive, or complete yard work. (Tr. 198, 199)

The vocational expert, Gless A. Kehr, testified that if George were given full credibility, her inability to stand or sit for more than a few seconds or minutes would require a conclusion that she was not capable of performing any of her past relevant work. (Tr. 204) The ALJ also asked the VE to classify her past relevant work in terms of exertional level and skill level. (Tr. 202) All past work was classified as light sedentary skilled positions except one position which entailed lifting patients. (Tr. 202, 203) The VE further testified that an individual George's age, education, and work experience who was limited to light work with occasional kneeling, crouching, crawling, stoop-

ing, and bending would be capable of performing George's past relevant work. (Tr. 203)

In her decision denying benefits, the ALJ found that George's conditions, including low back and spinal pain with possible degenerative disc disease, headaches, hypertension, and degenerative osteoarthritis in the knees, were severe but did not meet the criteria of any listing. (Tr. 16) The ALJ noted that George "is not extremely limited in walking" and "is not severely limited in ambulation." (Tr. 16) The ALJ further indicated that George's "medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that . . . [George's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible." (Tr. 17)

The ALJ indicated that the 2003 and 2004 consultative examinations "do not show significant neurological loss with regard to strength, reflexes or sensation which were reported as normal on both examinations." The ALJ further indicated that George's manipulation and coordination tested normal. Regarding hypertension, the ALJ noted that the findings did not show evidence of debilitating impairments and that the cardiac examination showed a regular rate of rhythm without extra heart sounds, "[t]hus, consultative examination does not warrant additional limitations beyond a sedentary level which is given in order to reduce potential exacerbation and exertion . . . also

note that with medication use her hypertension is controlled."
(Tr. 17, 155)

The ALJ described George's reported inability to perform daily activities. (Tr. 18) The ALJ discounted these statements because of the objective findings and George's returning "to work briefly in 2003 and 2004 which would not be consistent with that level of impairment." (Tr. 18) Based on the testimony of the vocational expert and George's physical residual functional capacity, the ALJ concluded that George was capable of performing the jobs as a Social Service director and case manager as generally performed in the national economy. (Tr. 18)

## Discussion

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. 42 U.S.C. §405(g) ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); *Golembiewski v. Barnhart*, 322 F.3d 912, 915 (7th Cir. 2003); *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept to support such a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct 1420, 1427, 28 L.Ed.2d 852 (1972) (*quoting* *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed.2d 140 (1938)). *See also* *Sims v. Barnhart*, 309 F.3d 424, 428 (7th Cir. 2002);

*Green v. Shalala,* 51 F.3d 96, 101 (7th Cir. 1995). An ALJ's decision must be affirmed if the findings are supported by substantial evidence and if there have been no errors of law. *Golembiewski*, 322 F.3d at 915; *Cannon v. Apfel,* 213 F.3d 970, 974 (7th Cir. 2000). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex. rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

Disability and supplemental insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. 20 C.F.R. §§404.1520, 416.920. The ALJ first considers whether the claimant is presently employed or "engaged in substantial gainful activity." 20 C.F.R. §§404.1520(b), 416.920(b). If she is, the claimant is not disabled and the evaluation process is over; if she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments which "significantly limits . . . physical or mental ability to do basic work activities."

20 C.F.R. §§404.1520(c), 416.920(c). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. 20 C.F.R. §401, pt. 404, subpt. P, app. 1. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of her past work. If, at this fourth step, the claimant can perform her past relevant work, she will be found not disabled. 20 C.F.R. §§404.1520(e), 416.920(e). However, if the claimant shows that her impairment is so severe that she is unable to engage in her past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of her age, education, job experience and functional capacity to work, is capable of performing other work and that such work exists in the national economy. 42 U.S.C. §423(d)(2); 20 C.F.R. §§404.1520(f), 416.920(f).

Although George, who is proceeding pro se, does not spell out her claims with complete clarity, there is no doubt she disputes the ALJ's credibility determination when she states that she "feels the judge made a wrong decision." This court will sustain the ALJ's credibility determination unless it is "patently wrong" and not supported by the record. *Schmidt v. Astrue*, 496 F.3d 833, 843 (7th Cir. 2007); *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) ("Only if the trier of fact grounds

his credibility findings in an observation or argument that is unreasonable or unsupported . . . can the finding be reversed."). The ALJ's "unique position to observe a witness" entitles her opinion to great deference. ***Nelson v. Apfel***, 131 F.3d 1228, 1237 (7th Cir. 1997); ***Allord v. Barnhart***, 455 F.3d 818, 821 (7th Cir. 2006). However, if the ALJ does not make explicit findings and does not explain them "in a way that affords meaningful review," the ALJ credibility determination is not entitled to deference. ***Steele v. Barnhart***, 290 F.3d 936, 942 (7th Cir. 2002); SSR 96-7p. The reasons for the ALJ's finding cannot be implied. ***Golembiewski,*** 322 F.3d at 916. Further, "when such determinations rest on objective factors or fundamental implausibilities rather than subjective considerations [such as a claimant's demeanor], appellate courts have greater freedom to review the ALJ's decision." ***Clifford v. Apfel***, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ must determine a claimant's credibility only after considering each of the claimant's "symptoms, including pain, and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §404.529(a); ***Arnold v. Barnhart***, 473 F.3d 816, 823 (7th Cir. 2007)("subjective complaints need not be accepted insofar as they clash with other, objective medical evidence in the record."); ***Scheck v. Barnhart***, 357 F.3d 697, 703 (7th Cir. 2004). If the claimant's impairments reasonably could produce the symptoms of which the claimant is complaining, the ALJ must evaluate the intensity and persistence of the claimant's

symptoms through consideration of the claimant's "medical history, the medical signs and laboratory findings, and statements from [the claimant, the claimant's] treating or examining physician or psychologist, or other persons about how [the claimant's] symptoms affect [the claimant]." 20 C.F.R. §404.529(c); *Schmidt v. Barnhart*, 395 F.3d 737, 746-47 (7th Cir. 2005)("These regulations and cases, taken together, require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from merely ignoring the testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding.").

If there is at least some medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence. *Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004). "If pain is disabling, the fact that its source is purely psychological does not disentitle the applicant to benefits." *Carradine*, 360 F.3d at 754. Rather, if the

> [c]laimant indicates that pain is a significant factor of his or her alleged inability to work, the ALJ must obtain detailed descriptions of the claimant's daily activities by directing specific inquiries about the pain and its effects to the claimant. She must investigate all avenues presented that relate to pain, including claimant's prior work record, information and observations by treating physicians, examining physicians, and third parties. Factors that must be considered include the nature and intensity of the claimant's pain, precipitation and aggravating factors, dosage and effectiveness of

> any pain medications, other treatment for relief of pain, functional restrictions, and the claimant's daily activities. (internal citations omitted)
>
> *Luna v. Shalala*, 22 F.3d 687, 691 (7th Cir. 1994)

*See also Zurawski v. Halter*, 245 F.3d 881, 887-88 (7th Cir. 2001).

In addition, when the ALJ discounts the claimant's description of pain because it is inconsistent with the objective medical evidence, she must make more than "a single, conclusory statement. . . . The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p at *2. *See Zurawski*, 245 F.3d at 887; *Diaz v. Chater*, 55 F.3d 300, 307-08 (7th Cir. 1995) (finding that the ALJ must articulate, at some minimum level, his analysis of the evidence). She must "build an accurate and logical bridge from the evidence to [her] conclusion." *Zurawski*, 245 F.3d at 887 (*quoting Clifford*, 227 F.3d at 872).

The ALJ concluded that George retained the capacity to perform her past relevant work, which was limited to light work with occasional kneeling, crouching, crawling, stooping, and bending, as well as no climbing of ladders, ropes, or scaffolds. (Tr. 18, 203) To the extent that George alleged she was incapable of this level of work, the ALJ found her less than credible. In

doing so, the ALJ noted that she claimed to be incapable of engaging in daily activities without assistance. The ALJ noted that she temporarily worked during 2003 and 2004 and further noted that the 2003 and 2004 consultative exams did not show significant neurological loss in strength or sensation and did not reveal muscle spasms. The ALJ also stated that George's hypertension was controlled by medicine and did not create persistent swelling or organ damage. From these statements, the ALJ concluded that the orthopedic findings suggested the possibility of sedentary work with limitations in postural movements.

The ALJ based her determination on the conclusion that George temporarily returned to work. However, the record does not indicate any employment in 2004, and with respect to temporary employment in 2003, the ALJ did not address the reasons for her departure and her ability during that time to perform the job, including her specific pain levels. There is no indication that the ALJ questioned George regarding these apparently failed attempts to return to work. In addition, the ALJ acknowledged that George's medically determinable impairments reasonably could be expected to produce the alleged symptoms. Thus, she could not merely ignore George's allegations and conclude without objective medical evidence that all her claims were unreliable. *Zurawski*, 245 F.3d at 887 (*citing Luna*, 22 F.3d at 691).

The ALJ also discredited George's testimony by noting that she had not been to a hospital or emergency room recently for her ailments, notwithstanding George's explanation that she did not

have the funds to see a physician since her insurance lapsed. The ALJ could not draw inferences about George's symptoms and their effects from a failure to pursue regular medical treatment without considering the explanation and information provided by George in the record. *See* SSR 96-7p ("However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.").

Further, the ALJ did not consider all of the medical evidence when making her credibility determination. The 2003 and 2004 consultative exams both suggested that George suffered from lower back pain and cervical spine tenderness which George described as unbearable at times. Further, the ALJ did not address the muscle spasms claimed by George during the 2004 consultative exam and the numbness claimed during both the 2003 and 2004 exams. In considering George's hypertension, the ALJ relied on an early 2005 progress note which stated "controlled HTN." However, a progress note dated June 2005, diagnosed George with "uncontrolled HTN."

The ALJ also stated that "I note that some of the claimant's symptoms, including blurred vision may be attributable to factors other than her impairment including broken glasses." The ALJ did not indicate what other symptoms or other causative factors

beyond broken glasses she was referring to. Even more problem-
atic, the record to which the ALJ points for this conclusion
merely indicated parenthetically, without suggesting causation,
that George, when she attended a consultative exam, happened to
have broken glasses. Consequently, the ALJ has misstated this
evidence and has ignored other evidence regarding headaches,
blurred vision, and dizziness. In addition, the ALJ also has not
reconciled her conclusion that George was not limited in her
ability to walk with evidence of osteoarthritis in her knees and
consultative exams that consistently noted her trouble walking.
This disregard for medical evidence leaves the ALJ's credibility
determination unclear. *See **Golembiewski***, 322 F.3d at 917. The
ALJ's decision lacks the requisite bridge between the evidence
and these hazy conclusions. The court recommends that on remand,
the ALJ "articulate specific reasons for discounting claimant's
testimony." ***Schmidt***, 395 F.3d at 746-47.

This same mistreatment of the record has produced an inaccu-
rate RFC determination. Under 20 C.F.R. §404.1527(d), an ALJ must
evaluate every medical opinion, regardless of its source. The
regulation further provides that "[u]nless we give a treating
source's opinion controlling weight under paragraph (d)(2) of
this section, we consider all of the following factors in decid-
ing the weight we give to any medical opinion." 20 C.F.R.
§404.1527. These factors include the examining and treating
relationship between the medical source and the claimant, the
frequency of the relationship, the support provided the opinion,

its consistency with the record as a whole, and whether the
source is a specialist. 20 C.F.R. §404.1527(d)(1)- (6).
RFC is an administrative assessment of what work-related activi-
ties an individual can perform notwithstanding her limitations.
SSR 96-8p; *Dixon*, 270 F.3d at 1178. When determining the claim-
ant's RFC, the ALJ must consider both the medical and non-medical
evidence in the record. *Dixon*, 270 F.3d at 1178. "The adjudicator
must also explain how any material inconsistencies or ambiguities
in the evidence in the case record were considered and resolved."
SSR 96-8p. Further, the hypothetical question posed by the ALJ to
a VE must fully set forth the claimant's impairments to the
extent that they are supported by medical evidence in the record.
*Cass v. Shalala*, 8 F.3d 552, 555-56 (7th Cir. 1993).

The hypothetical posed by the ALJ to the VE represented an
individual "who would be limited to light work with occasional
kneeling, crouching, crawling, stooping and bending. No climbing
of ladders, ropes and scaffolds." This limited RFC demonstrated
an inconsistency with the medical evidence that the ALJ has not
explained. For instance, in addition to those examples already
discussed, the 2003 and 2004 consultative exams all note that
George was unable to stoop or squat and was unable to tandem walk
or walk heel to toe. There is no explanation as to why this
evidence was completely ignored. The court recommends that on
remand an RFC, supported by the medical evidence and consistent
with the foregoing, is created and given to the VE. *Cass*, 8 F.3d
at 555-56.

George, as a *pro se* plaintiff, also asserts that the record was not fully developed when she states that "her medical records were not presented." An ALJ has a duty to develop a full and fair record. ***Smith v. Apfel***, 231 F.3d 433, 437 (7th Cir. 2000)(*citing* ***Thompson v. Sullivan***, 933 F.2d 581, 585 (7th Cir. 1991)) Failing to develop a full and fair record is "good cause" to remand for gathering of additional evidence. ***Smith***, 231 F.3d at 437; ***Thompson***, 933 F.2d at 586. "Moreover, when the claimant is unrepresented by counsel, the ALJ has a duty to scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts." ***Nelson v. Apfel***, 131 F.3d 1228, 1235 (7th Cir. 1997) (internal quotations and citations omitted). The ALJ's heightened duty applies with or without proper waiver of counsel. ***Nelson***, 131 F.3d at 1235. Nevertheless, "a significant omission is usually required before [the Seventh Circuit] will find that the secretary failed to assist pro se claimants in developing the record fully and fairly." ***Luna***, 22 F.3d at 692.

In light of the court's conclusion that in numerous instances medical evidence was misstated or overlooked, the court cannot conclude that the ALJ met this standard. Accordingly, the court recommends that on remand the ALJ sufficiently probe the evidence and develop the record fully and fairly consistent with this opinion and George's status as a pro se claimant.

Finally, plaintiff has alleged that she is entitled to remand for consideration of new evidence. Upon a showing of new material evidence and good cause for failure to incorporate the

evidence into the record in a prior proceeding, a court may remand the case and order additional evidence to be considered. 42 U.S.C. §405(g). Evidence is considered new if it is information that was not available prior to the ALJ's decision. *Sample v. Shalala*, 999 F.2d 1138, 1144 (7th Cir. 1993). New evidence is not material unless it relates to the relevant time period. *Brunes v. Astrue*, No. 3-06-CV-183, 2008 WL 821735, *7 (S.D. Ind. March 26, 2008). New evidence is only relevant if it was available on or before the date that the ALJ rendered an opinion. *Brunes*, 2008 WL 821735 at *7; *Perkins v. Chater*, 107 F.3d 1290, 1293-94 (7th Cir. 1997). Further, evidence is material if there is reasonable probability that a different conclusion would have been reached if the evidence was considered. *Perkins*, 107 F.3d at 1296.

Documents on pages one through four and 19 through 31 of plaintiff's motion to add new evidence did not exist when the ALJ rendered her opinion and thus, are not material. However, pages five thru 18 and 32 thru 56 include a history of medical records that were unavailable but relevant during the ALJ's hearing and opinion. These records indicate a reasonable probability that a different conclusion may have been reached. Further, plaintiff's argument that these documents were not incorporated in the prior proceeding because her doctor died and she was unable to obtain the records is considered good cause. Thus, the court recommends upon remand that the ALJ consider the evidence documented on

pages five through 18 and 32 through 56 of plaintiff's motion to add new evidence.

————————————

For the aforementioned reasons, the court **RECOMMENDS** that the petition for judicial review of the decision of the Commissioner of Social Security filed by the plaintiff, Dianne George, on April 26, 2007 (DE 1), with opening brief in support filed March 3, 2008 (DE 20), be **REVERSED** and **REMANDED.**

Pursuant to 28 U.S.C. §636(b)(1), the parties shall have ten (10) days after being served with a copy of this Recommendation to file written objections thereto with the Clerk of Court, with extra copies e-mailed to the Chambers of the Honorable Theresa L. Springmann, Judge of the United States District Court, Fort Wayne Division, and the Chambers of United States Magistrate Judge Andrew P. Rodovich, Hammond Division. The failure to file a timely objection will result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *Willis v. Caterpillar, Incorporated*, 199 F.3d 902, 904 (7th Cir. 1999); *Johnson v. Zema Systems Corporation*, 170 F.3d 734, 739 (7th Cir. 1999); *Hunger v. Leininger*, 15 F.3d 664, 668 (7th Cir. 1994); *The Provident Bank v. Manor Steel Corporation*, 882 F.2d 258, 260-61 (7th Cir. 1989); *United States v. Johnson*, 859 F.2d 1289, 1294 (7th Cir. 1988); *Lebovitz v. Miller*, 856 F.2d 902, 905 n.2 (7th Cir. 1988).

ENTERED this 26th day of November, 2008

                              s/ ANDREW P. RODOVICH
                                 United States Magistrate Judge